IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LUCKY LINCOLN GAMING LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE HARTFORD FIRE INSURANCE COMPANY and HUB INTERNATIONAL LIMITED,<br><br>Defendants. | Case No. 3:20-cv-01110-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Remand pursuant to 28 U.S.C. § 1447 filed by Plaintiff, Lucky Lincoln Gaming LLC ("Lucky Lincoln") (Doc. 16). For the reasons set forth below, the Motion to Remand is granted.

## BACKGROUND

Defendant HUB International Limited ("HUB") procured and Defendant Hartford Fire Insurance Company ("HFIC") issued a Commercial Inland Marine insurance policy ("Policy") to Lucky Lincoln with an effective policy period of March 3, 2017 to March 3, 2018 (Doc. 1-1, p. 6; Doc. 1-5, p. 573). A copy of the Policy was given to Lucky Lincoln on March 31, 2017 (Doc. 1-5, pp. 607-09). HFIC reissued the Policy to Lucky Lincoln for the effective policy periods of March 3, 2018 to March 3, 2019—March 3, 2019 to March 3, 2020—and March 3, 2020 to March 3, 2021 (*Id.* at pp. 618; 682; Doc. 1-4, p. 34).

During the pandemic, Lucky Lincoln unfortunately lost income from shutting down its business (Doc. 1-1). As a result, Lucky Lincoln submitted a claim for coverage

of its losses to HFIC noting that COVID-19 is a "covered cause of loss" under the under the Business Income and Extra Expense provision of the Policy for losses in revenue "exceeding $190,000 per day" because of mandatory closure (*Id.*). On April 20, 2020, HFIC denied the claim for coverage (*Id.*).

On August 18, 2020, Lucky Lincoln filed a complaint against HFIC and HUB in the Circuit Court of the Third Judicial Circuit of Madison County, Illinois (*Id.*). Lucky Lincoln brings three claims against HFIC: declaratory judgment (Count I); breach of contract (Count II); and statutory penalty for bad faith denial of insurance under 215 ILCS 5/155 (Count III) (*Id.*). Lucky Lincoln brings one claim against HUB: negligent failure to procure insurance (Count IV) (*Id.*).

On October 21, 2020, HFIC removed the case to this Court, asserting that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446 (Doc. 1). On November 20, 2020, Lucky Lincoln, a corporate citizen of Illinois, moved to remand the case back to state court because the joinder of HUB, a corporate citizen of Illinois, defeats complete diversity (Doc. 17, p. 2). HFIC filed a memorandum in opposition to Lucky Lincoln's Motion to Remand on December 21, 2020 (Doc. 20).[1]

## Discussion

HFIC alleges HUB is fraudulently joined and thus does not defeat diversity of citizenship (Doc. 1). Lucky Lincoln argues that HUB is a properly joined party, and there is no diversity of citizenship—thus remand is proper (Docs. 16, 17).

---

[1] HUB did not consent to removal, but "failure to consent can be excused if the non-joining defendant has been fraudulently joined in the action." *Lassers v. Everett*, 2005 WL 8179231, at *2 (N.D. Ill. Oct. 25, 2005) (citing *Fellhauer v. City of Geneva*, 673 F. Supp. 1445, 1447 (N.D. Ill. 1987)).

The "fraudulent joinder" doctrine prohibits a plaintiff from joining a non-diverse defendant in an action simply to destroy diversity jurisdiction. *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999); *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). If the removing defendant establishes fraudulent joinder, the district court considering removal may "disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 (7th Cir. 2009).

To establish fraudulent joinder, the removing defendant has the burden of proving the plaintiff cannot establish a cause of action against the in-state defendant. *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013). Courts only assess whether the plaintiff's complaint provides a reasonable basis for recovery against an in-state defendant; not whether the plaintiff will ultimately be successful on the merits. *Asperger v. Shop Vac Corp.*, 524 F.Supp.2d 1088, 1096 (S.D. Ill. 2007). In reviewing such a claim, a court must construe "all issues of fact *and law* in favor of the plaintiff . . . ." *Morris*, 718 F.3d at 666 (quoting *Poulos v. NAAS Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)). Even if a state court may ultimately find a plaintiff has failed to state a claim against a defendant, joinder of the claim is not "fraudulent" for purposes of jurisdiction so long as the state law issue is subject to reasonable argument on both sides. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3d Cir. 1992). Put differently, the defendant has the "heavy burden" of showing the plaintiff's claim has "no chance of success" against the non-diverse defendant. *Poulos*, 959 F.2d at 73.

I.        **Applicability of 725 ILCS 5/13-2214.4 to Lucky Lincoln's Claim Against HUB**

Here, the Court must determine whether HFIC has proved that Lucky Lincoln has no chance of success on its negligent failure to procure insurance claim against HUB. HFIC contends that it is impossible for Lucky Lincoln to maintain its claim against HUB as it is barred by the two-year statute of limitations under 725 ILCS 5/13-2214.4. Lucky Lincoln does not dispute that the two-year statute of limitations applies to the claim against HUB (Doc. 17). Lucky Lincoln also does not dispute that if the statute of limitations has run, then the claim against HUB is time-barred.

The parties' dispute focuses on when Lucky Lincoln's cause of action against HUB accrued, and thus, when the two-year Illinois statute of limitations began to run. According to HFIC, Illinois has a bright-line rule, and the statute of limitations began to run when the Policy was delivered to Lucky Lincoln on March 31, 2017 (Doc. 20). But Lucky Lincoln contests this purported bright-line rule under Illinois law (Doc. 17).

Both Lucky Lincoln and HFIC rely on the same Illinois Supreme Court case, *Am. Family Mut. Ins. Co. v. Krop*, 120 N.E.3d 982 (Ill. 2018). In *Krop*, the insurer denied the insured coverage for a claim arising from a defamation action against the insured. *Id*. at 984. The insurer filed a declaratory judgment to determine whether it had a duty to defend its insured in the tort action. The insured filed a counterclaim against the insurance agent for negligently selling them a deficient policy. *Id*. Both the insurance agent and the insurance company moved to dismiss the claims as time-barred pursuant to the two-year statute of limitation. *Id*. at 985.

The Illinois Supreme Court in *Krop* recognized a "narrow set of cases in which the

policyholder reasonably could not be expected to learn the extent of coverage simply by reading the policy." *Id*. at 992. These narrow set of cases include: 1) policies "contain[ing] contradictory provisions or fail[ing] to define key terms," 2) "circumstances that give rise to the liability may be so unexpected that the typical customer should not be expected to anticipate how the policy applies[,]" and 3) a customer reasonably relying on an insurance agent's representations about the policy. *Id*.

Next, the Court acknowledged that the statute of limitations *normally* accrues upon the receipt of a nonconforming policy because insureds have an obligation to read and understand the policies. *Id*. at 988. The Court then found that "[t]he alleged facts of this case do not present such an exceptional circumstance where a customer reasonably should not be expected to understand the terms of the policy." *Id*. at 992. The Court continued noting the following:

> The [ ] policy covered legal liability only if it resulted from "bodily injury or property damage." The first page of the policy includes a "DEFINITIONS" section that explicitly states that "[b]odily [i]njury does not include * * * emotional or mental distress, mental anguish, mental injury, or any similar injury unless it arises out of actual bodily harm to the person."

*Id*. On these facts, the Court held that the insured did "not plead[ ] facts showing that they could not have read their [ ] policy and understood its terms, so the cause of action accrued when they first purchased their policy." *Id*.

Lucky Lincoln argues that this situation falls into the narrow set of cases in which it could not be expected to learn the extent of coverage simply by reading the policy— thus the statute of limitations does not accrue until the denial of its claim (Doc. 17, p. 3).

Lucky Lincoln points out that "[HFIC] included no virus exclusion and bases its denial on undefined terms that some courts have interpreted as providing [HFIC's] posited limitation on its policy on delivery such that the cause of action against HUB as its broker did not accrue until denial of coverage in April of 2020" (*Id*. at p. 5). Lucky Lincoln continues noting that "though many insurers choose to include an exclusion specific to damages occasioned by virus or pandemic, the [HFIC] policy at issue here contained no such exclusion" (*Id*.). "Such an exclusion might have put Plaintiff on notice of such a limitation on coverage, but, as pleaded in the Complaint, the [HFIC] policy has no such exclusion . . . ." (*Id*.). Lucky Lincoln also argues that HFIC fails to clearly define what constitutes as "physical loss or damage to property." (*Id*. at p. 6).

HFIC responds with three main arguments. First, HFIC points to the weaknesses in Lucky Lincoln's allegations to show why Lucky Lincoln is barred by the statute of limitations (Doc. 20). This argument is a nonstarter because the statute of limitations is an affirmative defense. *See United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (noting "[d]ismissal under Rule 12(b)(6) was irregular, for the statute of limitations is an affirmative defense"). Plaintiffs, like Lucky Lincoln, are not required to plead around defenses, and the Seventh Circuit has acknowledged that "[r]esolving defenses comes after the complaint stage." *Id*.

Second, HFIC contends this is not a narrow case because the phrase "physical loss or damage to property" is readily understood—"[m]ore than 60 courts nationwide—including two in this District—have interpreted that very term and applied it to bar COVID-19 business interruption claims just like Plaintiff's here" (Doc. 20, p. 7). The

problem is all the cases HFIC cites in support of this notion were decided on the defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) or 12(c).[2] "[T]he test for fraudulent joinder . . . is a less searching test than the test under Rule 12(b)(6) . . . . In fact, a federal court may find that a nondiverse defendant is not fraudulently joined for the purposes of jurisdiction, and later a state court may find that the plaintiff failed to state a claim against the same nondiverse defendant, who will then be dismissed from the suit." *Hill v. Olin Corp.*, 2007 WL 1431865, at *4 (S.D. Ill. May 14, 2007) (quoting *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 847 (S.D. Ill. 2006)) (citations omitted).

Not only do the two cases "in this District"— *Sandy Point Dental, PC*, 488 F. Supp. 3d, and *T & E Chicago LLC*, 2020 WL 6801845—have no precedential value,[3] but also they are unpersuasive. Neither case analyzes Illinois case law interpreting physical loss to require a physical alteration to property. In *Sandy Point Dental, PC*, 488 F.Supp.3d at 693, the court found that "the words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or

---

[2] *Kirsch v. Aspen Am. Ins. Co.*, 2020 WL 7338570, at *2 (E.D. Mich. Dec. 14, 2020) (defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(6)); *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 2020 WL 7078735, at *3 (D. Kan. Dec. 3, 2020) (same); *Long Aff. Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*, 2020 WL 6865774, at *2 (C.D. Cal. Nov. 12, 2020) (same); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693 (N.D. Ill. 2020) (same); *T & E Chicago LLC v. Cincinnati Ins. Co.*, 2020 WL 6801845, at *3 (N.D. Ill. Nov. 19, 2020) (same); *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 2020 WL 6392841, at *2 (S.D. Fla. Nov. 2, 2020) (same); *Robert W. Fountain, Inc. v. Citizens Ins. Co. of Am.*, 2020 WL 7247207, at *2 (N.D. Cal. Dec. 9, 2020) (defendant moved to dismiss under Federal Rule of Civil Procedure 12(c))

[3] The Seventh Circuit has repeatedly reminded courts and counsel that district court opinions have no precedential value. *See Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 457–58 (7th Cir. 2005) ("as we have noted repeatedly, a district court decision does not have stare decisis effect; it is not a precedent").

adverse business consequences that flow from such closure." The district court used a case out of the Southern District of New York and one case from the Appellate Court for the First District of Illinois as parentheticals. *Id*. The court then explained that "[t]his holding is consistent with *other courts* that have evaluated whether the coronavirus causes property damage warranting insurance coverage." *Id*. (emphasis added). The *other courts* were not Illinois courts, but included the Southern District of New York, Western District of Texas, a Michigan state court, and the Superior Court of the District of Columbia. *Id*. at 694. In *T & E Chicago LLC*, 2020 WL 6801845 at *4, the court refers to *Sandy Point* and an Illinois state court decision—*It's Nice, Inc. v. State Farm Fire and Cas. Co.*, No. 2020L000547 (Ill. Cir. Ct. Sept. 29, 2010)—but then goes on to mention a number of cases from other jurisdictions that "decid[ed] against coverage for losses resulting from closure orders under similar policy provisions." *Id*.

The use of cases outside Illinois in *Sandy Point*, *T & E Chicago*, and HFIC's briefing reveals that Illinois law is still undeveloped in this novel intersection between COVID-19 and insurance law. When evaluating a claim of fraudulent joinder, district courts should be restrained—not innovative—in interpreting state law. *See Bova v. U.S. Bank, N.A.*, 446 F.Supp.2d 926, 934 n. 3 (S.D. Ill. 2006) (noting that the Court's "ability to craft novel interpretations of Illinois law is limited . . . particularly in the context of evaluating a claim of fraudulent joinder, where novel issues of state law are to be resolved in favor of remand"); *see also Mitchell v. Philip Morris USA Inc.*, 2019 WL 1787587, at *5 (N.D. Ill. Apr. 24, 2019) (finding that "where a case presents ambiguities in controlling state-law, courts must resolve all of those ambiguities in favor of remand") (citing *Smith v. Merck & Co.*,

472 F. Supp. 2d 1096, 1101 (S.D. Ill. 2007)); *Elftmann v. Vill. of Tinley Park,* 191 F. Supp. 3d 874, 878 (N.D. Ill. 2016) (acknowledging that courts should interpret the removal statute narrowly, "resolving any doubt in favor of the plaintiff's choice of forum in state court") (citations omitted). Under this standard and the lack of clarity in the Illinois courts,[4] the Court cannot find that "physical loss or damage to property" is readily understood for fraudulent joinder purposes.

Third, HFIC argues that this case does not fall within the *Krop*'s narrow set of cases because "the presence or absence of an exclusion addressing a specific condition, such as a virus, does not shed any light on whether there has been direct physical loss or physical damage in the first instance" (Doc. 20, p. 11). HFIC continues arguing that "[t]he coverage determination must instead be made based on the plain language of a Policy's coverage terms" (*Id.*).

Similar to HFIC's argument regarding "physical loss or damage to property," whether the absence of a virus exclusion is inconsequential is up for debate. "In Illinois, as in many other jurisdictions, if an insurer does not intend to insure against a risk likely to be inherent in the insured's business, the insurer should expressly exclude that risk

---

[4] *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 2021 WL 679109 (N.D. Ill. Feb. 22, 2021), a multidistrict litigation where "[t]he fundamental questions at stake in [the] litigation are how properly to classify the interruption that has happened [from] [the] [pandemic], and whether this particular interruption is covered under the policy," *id.* at *1, the district court applied law from *Illinois* and other states and found that "direct physical loss of property" includes the loss of physical use of the covered property. *Id.* at *9. The Court recognizes there is a difference between direct physical loss *of* property and physical loss *to* property. But as *Society Insurance* explains:
> Remember here that the operative text is "direct physical loss of or damage to covered property." The disjunctive "or" in that phrase means that "physical loss" must cover something different from "physical damage." "[I]t is axiomatic that courts interpret contracts so as to give effect to all of their provisions."

*Id.* at *8 (quoting *In re Airadigm Communications, Inc.*, 616 F.3d 642, 657 (7th Cir. 2010)).

from the coverage of the policy." *Dash Messenger Serv., Inc. v. Hartford Ins. Co. of Illinois*, 582 N.E.2d 1257, 1263 (Ill. App. Ct. 1991). Lucky Lincoln asserts that many insurers choose to include a virus or pandemic exclusion (Doc. 17). HFIC does not contest this fact. Instead, HFIC points to a case from the Superior Court of the District of Columbia. This is not enough to succeed on its fraudulent joinder claim.

Construing the facts and law in a light most favorable to Lucky Lincoln, there is a reasonable possibility that an Illinois state court could rule against HUB on its statute of limitation defense. Thus, HUB was not fraudulently joined, and the Court cannot disregard its Illinois citizenship. Because the parties are not diverse, this Court lacks subject matter jurisdiction.

## II.     Common Defense Rule

Another basis for remand of this case is the "common defense" rule.[5] Under the "common defense" rule, the district court must remand if assessing the non-diverse defendant's chance of success forecloses the claims against diverse defendants. *See Walton v. Bayer Corp.*, 643 F.3d 994, 1001 (7th Cir. 2011) ("a plaintiff can defeat the fraudulent-joinder exception to the requirement of complete diversity of citizenship by proving that his claim against the nondiverse defendant is no weaker than his claim against the diverse defendants").

On the surface, the "common defense" rule does not appear to apply because HUB's statute of limitations defense is not available to HFIC and the claims alleged against HUB and HFIC are different. But "the common defense doctrine provides that

---

[5] Some courts refer to this as the common defense exception or common defense doctrine.

when the *same argument* or defense defeats a plaintiff's claim against diverse and non-diverse defendants that *argument* or defense may not be the basis for a fraudulent joinder finding." *In Re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 692 F. Supp. 2d 1025, 1034 (S.D. Ill. 2010), *aff'd sub nom. Walton v. Bayer Corp.*, 643 F.3d 994 (7th Cir. 2011) (emphasis added); *see also Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146, 153 (1914) (finding that a ruling on fraudulent joinder was barred where such finding "manifestly went to the merits of the action as an entirety, and not to the joinder; that is to say, it indicated that the plaintiff's case was ill founded as to all the defendants").

Here, HUB's statute of limitations defense ultimately involves the same *arguments* that would also defeat Lucky Lincoln's claims against HFIC. As shown above, the Court had to determine whether this case falls within the "narrow set of cases in which the policyholder reasonably could not be expected to learn the extent of coverage simply by reading the policy." *Krop*, 120 N.E.3d at 992. Whether this case falls within *Krop*'s narrow set of cases turns on the interpretation of the policy because Lucky Lincoln argues it could not be expected to learn the extent of coverage by reading the policy as it lacks a virus exclusion and the policy fails to define what constitutes as "physical loss or damage to property." *See id*. ("[a]lthough customers should read their policy and discover any defects, we recognize that there will be a narrow set of cases in which the policyholder reasonably could not be expected to learn the extent of coverage simply by reading the policy. In some cases[,] the insurance policies may contain contradictory provisions or fail to define key terms.").

For instance, in responding to whether "direct physical loss or damage is readily

understood"—HFIC argues that courts nationwide "have interpreted that very term and applied it to bar COVID-19 business interruption claims just like Plaintiff's here" (Doc. 20, p. 7). HFIC continues noting that "Illinois courts interpret physical loss to require a physical alteration to property" (*Id*. at p. 8).

These same *arguments* would also defeat Lucky Lincoln's claims against HFIC because Lucky Lincoln's complaint alleges that HFIC made an "express promise in its policy to cover the Plaintiff's business interruption losses due to direct physical loss as well as loss incurred when the government forces it to close . . . " (Doc. 1-1, p. 2-3). Lucky Lincoln further alleges in its complaint that "[HFIC's] conclusion that the actual or alleged presence of a substance like COVID-19 does not result in property damage is contrary to the law in Illinois" (*Id*. at p. 3). In Count I against HFIC, Lucky Lincoln "seek[s] a declaratory judgment from this Court declaring . . . Plaintiffs losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Policy . . . ."(*Id*. at p. 12). In Count II against HFIC for breach of contract, Lucky Lincoln alleges "[t]he Policy is an insurance contract under which [HFIC] was paid premiums in exchange for its promise to pay Plaintiffs losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing them to close their businesses" (*Id*.). Then in Count III, Lucky Lincoln seeks statutory penalty for bad faith denial of insurance under 215 ILCS 5/155 (*Id*. at p. 13).

Because HUB's statute of limitations defense ultimately involves the same *arguments* that would also defeat Lucky Lincoln's claims against HFIC, the "common

defense" rule applies, and the Court cannot find HUB was fraudulently joined based on the applicability of 725 ILCS 5/13-2214.4.

## CONCLUSION

For these reasons, the Motion to Remand (Doc. 16) filed by Plaintiff Lucky Lincoln is **GRANTED**. This action is **REMANDED** to the Circuit Court of Madison County, Illinois, for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

DATED: April 14, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**